1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Best Western International, Inc., an)   No. CV-11-1246-PHX-LOA
    Arizona non-profit corporation,       )
10                                          )   **REPORT AND**
                        Plaintiff,          )   **RECOMMENDATION,**
11                                          )   **FINDINGS OF FACT, AND**
    vs.                                     )   **CONCLUSIONS OF LAW**
12                                          )
    Richland Hotel Corporation GP, LLC, a)
13  Texas limited liability company; Gurmukh)
    Kullar, a Nevada resident,             )
14                                          )
                        Defendants.         )
15                                          )
                                           )
16  ─────────────────────────────────────)

17         After Best Western filed its Motion for Default Judgment on August 9, 2011, a default

18  damages hearing was conducted in open court subsequent to the entry of default against

19  Defendants Richland Hotel Corporation GP, LLC ("Richland Hotel"), a Texas limited

20  liability company, and Gurmukh Kullar (collectively "Defendants" or "Kullar"), a Nevada

21  resident, on the Complaint of Plaintiff Best Western International, Inc. ("Best Western"), an

22  Arizona non-profit corporation. (Doc. 26)  Best Western seeks 1) contractual damages of

23  $71,523.71 ($66,614.61 in principal plus pre-judgment interest, called a "service charge,"

24  of $4,909.10, calculated at the rate of one and one-half percent (1.5%) per month[1]) from

25  ─────────────────

26         [1] The hearing testimony and Best Western's monthly invoices, Exhibit 1 at the
    hearing, reflect a "service charge on balances 45 days and older" of "one-and-a-half percent
27  interest charge on the amount that was due from the prior month." (Default hearing transcript
    ("Tr.") at 16-17, 19)  The parties' Membership Agreement provides in relevant part:

28

March 1, 2011 through September 30, 2011, owed on Defendants' open account, as alleged in Count I (breach of contract) and Count II (open account) of the Complaint; 2) $63,460.34 in liquidated damages as authorized and determined by the parties' Membership Agreement as a result of Defendants' unauthorized post-termination use of Best Western's trademarks and trade name, as alleged in Count III (breach of contract - post-termination use of trademarks); and 3) an award for Best Western's attorneys' fees, costs, and non-taxable expenses in the total sum of $10,366.15 pursuant to the parties' Membership Agreement to award "all attorneys' fees, costs and expenses incurred by Best Western" in this action. (Docs. 1; 1-2, Exhibit ("Exh.") 1 ¶ 36 at 9; 25 at 2; 28-1, Exh 1; 29; tr. at 11-19, 31-38, 28) At the November 22, 2011 default damages hearing, Best Western moved to withdraw its seven other causes of action alleged in the Complaint and its Motion for Preliminary Injunction, doc. 10, as Best Western received information that Defendants' trademark infringement ceased sometime between June 7, 2011 and October 13, 2011. (Docs. 22 at 2; 25 at 2; tr. at 5)  Cheryl Pollack, who is, and has been since 2006, Best Western's Director of Member Services and Development Administration, testified at the hearing. (Doc. 18, Affidavit ("Aff.") of Cheryl Pollack, ¶ 1 at 1; tr. at 9)

Pursuant to General Order 11-3[2], the undersigned Magistrate Judge recommends that

> [Defendants] agree[] to timely pay all fees, dues, charges, and assessments imposed generally on the membership by the Board, and the cost of all goods or services provided by or ordered through Best Western. Past due amounts shall bear interest at the rate of one-and-a-half percent (1.5%) per month from the due date until paid, provided that such interest charge shall in no way authorize or excuse late payments or limit Best Western's rights and remedies against [Defendants].

(Doc. 1-2, Exh 1, ¶ 12 at 5)

[2] General Order 11-3, entitled Dismissal of a Civil Case Assigned to a United States Magistrate Judge Absent Voluntary Consent by the Parties Under 28 U.S.C. § 636(c)(1), directs that when a Phoenix Division magistrate judge to whom a civil action has been assigned lacks jurisdiction to proceed, the order or, in this case, the report and recommendation shall be directed to Senior United States District Judge Stephen M. McNamee for ruling. General Order 11-3, www.azd.uscourts.gov at Rules/General Orders.

default judgment be entered in favor of Best Western against Defendants, jointly and severally, in the amount of $145,350.20 for the reasons set forth in this Report and Recommendation.

**I. Background**

### A. Best Western

Best Western, an Arizona non-profit corporation with its principal place of business in Phoenix, Arizona, operates as a membership organization consisting of individually owned and operated hotels. (Doc. 1, ¶¶ 9 at 3, 11 at 2) The rights and duties of Best Western and its members are governed by a membership agreement. (*Id.*, ¶ 2) Best Western provides its members with a worldwide reservation system and worldwide marketing campaigns, as well as an option to participate in collective purchasing of hotel equipment, furnishings, and supplies (the "Best Western Services"). (*Id.*, ¶¶ 12-13; Aff. of Pollack, doc. 18, ¶ 6 at 2-3)

After adopting its trade name in 1947, Best Western began using "Best Western" as its trademark, identifying hotel services provided to member hotels that are affiliated with Best Western. (Doc. 1, ¶¶ 3-4) Best Western has continuously and extensively promoted its trade name and trademark in interstate commerce since 1947, and as a result of this extensive promotion, its trade name and trademark have become well-known among consumers as a source-identifying symbol. (*Id.*, ¶ 5) Since 1959 through the present, Best Western has owned, and has registered with the United States Patent and Trademark Office, many trademarks, service marks, logos, and collective membership marks ("Best Western Symbols"). (*Id.*, ¶¶ 16-18 at 5-8) Best Western Symbols are inherently distinctive and possess strong secondary meaning. (*Id.*, ¶ 19 at 8)

The rights and obligations of Best Western's members are determined by their members and are set forth in each individual membership agreement, Best Western's bylaws and articles, rules and regulations, and other regulatory documents as defined in Best Western's bylaws. (*Id.*, ¶ 2) In exchange for receiving Best Western Services and the use of the Best Western's limited, non-exclusive license, Best Western's members are obligated to promptly pay, when due, such things as, annual dues, membership fees, and other

assessments. (*Id*., ¶ 14; doc. 18, ¶ 5) Best Western's membership fees are due December 1 of each year and are billed in monthly installments over the course of the following year to accommodate its members. Annual dues are charged in August of each year. (Doc. 1, ¶ 14) Dues, fees and assessments other than the Best Western's membership fees are paid by Best Western's members and billed monthly. (*Id*.)

A membership agreement authorizes Best Western's Board of Directors to terminate a member hotel for failure to meet certain quality and design standards. Best Western's membership agreements and regulatory documents establish the minimum standard scores that each member must meet in order to achieve and maintain its membership with Best Western. As a result, consumers worldwide associate Best Western Symbols with high quality in the hotel and motel industry. (*Id*., ¶ 20) A key element of Best Western's branding effort is the public display of the Best Western Symbols on the premises of member hotels through signs, publications, and other public displays that utilize the Best Western Symbols. (*Id*., ¶ 21) Upon a member's default of its obligations set forth in the membership agreement and regulatory documents, Best Western's Board of Directors may terminate the membership and Best Western's license. (*Id*., ¶ 22) Best Western's license allowing a member to use the Best Western Symbols ends upon a membership termination, and within 15 days following the membership termination, the former member must cease and desist from using, and remove from public view, all Best Western Symbols and all references to Best Western. (*Id*., ¶ 23) Termination of a Best Western membership results in a termination of the Best Western license, and imposes the obligation to "remove from public view and cease using" all Best Western Symbols and all other references to Best Western within 15 days of the date of termination. (Docs. 1, ¶ 29; 1-2, ¶ 22 at 7) Upon termination, the former member must also not use "anything consisting of or incorporating any one or more words, letters, designs or devices which contain any part of any Best Western Symbol, or which singly or together are similar in spelling, sound, appearance or otherwise to any Best Western Symbol." (Docs.

1, ¶ 31 at 10; 1-2, ¶ 23 at 7[3])

**B. Richland Hotel and Gurmukh Kullar**

Defendant Richland Hotel is a Texas limited liability company, an owner of the subject hotel property, and, at all times material hereto, was doing business as Best Western Swiss Clock Inn, located in Ft. Stockton, Texas. (Docs. 1, ¶ 5; tr. at 14-15) Baljinder Chima, the Richland Hotel's President and his spouse, executed Best Western's Membership Application and Agreement ("Membership Agreement"), dated December 7, 2006. (Doc. 1-2, Exhibit ("Exh.") 1 at 11)  As a Texas limited liability company, the Richland Hotel is neither a minor nor an incompetent person. (Doc. 1-2, at 15)  Pursuant to Rule 4(e)(2)(A), Fed.R.Civ.P., the Richland Hotel was served with the Summons, Verified Complaint, and Corporate Disclosure Statement on July 7, 2011, by personal service on Pritpal Grewal, its registered agent, at Mr. Grewal's place of residence in Modesto, California. (Doc. 8) Pritpal Grewal is not a defendant in this action.

On or about December 7, 2006, Defendant Kullar executed the parties' Membership Agreement as a partial owner and the designated voting member in the Membership Agreement for Defendants. (Docs. 1, ¶¶ 6, 24 at 9; 1-2, at 3[4], 12-13, 15) Upon Best

---

[3] Best Western's Rules & Regulations state:

Upon termination or cancellation of membership, the former Best Western member *shall remove the Best Western sign . . . When the sign cabinet is removed, it must be destroyed or modified so that the top of the cabinet has no curvilinear features . . .* The cost of removal of Best Western identification upon termination shall be the responsibility of the former member.

(Docs. 1, ¶ 32; 1-2, Exh 2 at 26, § 300.6 (emphasis added).

[4] Best Western's Membership Agreement provides that it "[i]s made jointly by the owner . . . of the [Richland] Hotel and a natural person known as the voting member. . . The voting member is <u>Gurmukh Kullar</u>. THE OWNER . . . AND THE VOTING MEMBER ARE EACH PERSONALLY RESPONSIBLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS TO BEST WESTERN ARISING UNDER THIS MEMBERSHIP APPLICATION AND AGREEMENT . . . ." (Doc. 1-2, ¶ 3 at 3)

Western's approval of the Membership Agreement, Defendants were bound by the Membership Agreement and regulatory documents. (Doc. 1, ¶ 25 at 9)  At all times material to this lawsuit, Defendant Kullar was not a minor, an incompetent person, or in the military and he has actual knowledge of this lawsuit.[5]  Best Western initially believed Kullar resided in California, but subsequently Best Western discovered he resided, and was domiciled, in Nevada where the Summons and Complaint were served at Kullar's dwelling on July 8, 2011, by service upon Rana Singh, a person of suitable age and discretion who resided at Kullar's residence in Reno, Nevada. (Docs. 9, 22 at 4)  See, Rule 4(e)(2)(B), Fed.R.Civ.P.

**C. The Allegations**

The Complaint alleges the Richland Hotel refused, and continues to refuse, to pay certain amounts due and owing to Best Western on an open account and in breach of contract as required by the Membership Agreement. (Doc. 1, ¶¶ 49-52, 54-57)

The Complaint also alleges the Richland Hotel failed to meet Best Western's quality standards and, therefore, Defendants' Best Western membership was terminated on April 6, 2011. (*Id.*, ¶ 33)  Pursuant to the terms of the Membership Agreement, Defendants were obligated to remove all Best Western Symbols from the Richland Hotel and in its advertising, no later than April 21, 2011. (*Id.*, ¶ 34)  On April 6, 2011, Best Western notified Kullar, on behalf of himself as the voting member and representative of Richland Hotel, that their Best Western membership was terminated because the Richland Hotel failed to attain a minimum Guest Rooms/Public Areas Assessment score of 875 as required by the parties' Conditional Extension agreement, dated October 7, 2010. (Docs. 1, ¶ 33; 1-2, at 28-29; 18, ¶ 6)  In an April 6, 2011 letter, Best Western notified Defendant Kullar that, no later than April 21, 2011 (fifteen days after the April 6, 2011 notification of termination), Defendants were obligated to remove, and cease and desist the use of, all Best Western Symbols, including its

---

[5] Defendant Kullar has contacted Best Western's counsel by telephone, e-mail, dropped by her office without prior notice, and instructed two separate attorneys to contact Best Western's counsel regarding this matter. (Docs. 17-1, Exhs. 1 and 2 at 3-6; 22-1, Exh. 1 at 3-5)

trademarks, at the Richland Hotel because the cancellation of Defendants' membership with Best Western resulted in the termination of Best Western's license to use Best Western Symbols. (Docs. 1, ¶ 34; 18, ¶ 10)

On April 25, 2011, a Best Western Regional Service Manager inspected the Richland Hotel and observed Best Western Symbols were still being displayed at the Richland Hotel. (Doc. 1, ¶ 35) Best Western denied Defendants' request to reconsider the terminated membership because Defendants failed to remove the Best Western Symbols from public view, as the removal of the Symbols was an element of the initial criteria required for reconsideration. (*Id.*, ¶ 36) The next day, Best Western's representative observed numerous logos remained on items throughout the Richland Hotel - including wall and ownership plaques, guest room keys, ice buckets, trays, wastebaskets, travel guides and directories, telephone faceplates, soaps, shampoo, and cups. (*Id.*, ¶ 37; doc. 1-2, Exh 4, Logo Infringement Assessment Report and photographs at 31-55) Best Western's representative observed exterior and interior signage, displaying Best Western's Symbols like its curvilinear signs, which had not been removed, altered, or destroyed at the Richland Hotel, as required by the Membership Agreement and Best Western's regulatory documents. (*Id.*)

On June 7, 2011, Best Western again sent its representative to the Richland Hotel. Best Western's representative observed that the Richland Hotel continued to display Best Western Symbols on its property signs and documentation regarding the Texas Sales and Use Tax Permit in the Richland Hotel's lobby, and the Richland Hotel use Best Western's SpeedLinks wireless network without Best Western's lawful authority. (*Id.*, ¶¶ 38-39; doc. 1-3, Exh 5, Logo Infringement Assessment Report and photographs at 2-14; doc. 18, ¶ 11)

Best Western filed this action on June 24, 2011. (Doc. 1) On October 13, 2011, Best Western's representative discovered that all Best Western Symbols had been removed from the Richland Hotel, including the curvilinear sign cabinets. (Doc. 22-1, Exh 3, Logo Infringement Assessment Report at 12)

**II. Jurisdiction**

"[W]hen entry of judgment is sought against a party who has failed to plead or

otherwise defend, a district court has the affirmative duty to look into its jurisdiction over the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."); *Golden Scorpio Corp. v. Steel Horse Saloon I*, 2009 WL 976598, * 3 (D.Ariz. April 9, 2009).

### A. Subject-Matter Jurisdiction and Venue

Federal courts have original subject-matter jurisdiction over a trademark infringement action because it arises under the laws of the United States and is a "claim for relief arising under [an of] Act of Congress relating to patents, . . . trademarks . . . and . . . unfair completion when joined with a substantial and related claim under the . . . trademark laws." 28 U.S.C. §§ 1331, 1338(a), (b); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936 (9th Cir. 2011); *Scholastic Entertainment, Inc. v. Fox Entertainment Group, Inc.*, 336 F.3d 982, 986 (9th Cir. 2003). The District Court of Arizona has subject-matter jurisdiction over this lawsuit pursuant to Best Western's trademark infringement and related unfair competition claims brought under the Lanham Act, 15 U.S.C. § 1111 *et seq*., and supplemental jurisdiction over Best Western's state law claims pursuant to 28 U.S.C. § 1367. *Aristocrat Technologies, Inc. v. High Impact Design & Entertainment*, 642 F.Supp.2d 1228, 1235 (D.Nev. 2009). Best Western's Complaint alleges two federal claims under the Lanham Act, one for trademark infringement (Count IV) under 15 U.S.C. § 1114(1), and one for unfair competition (Count V) under 15 U.S.C. § 1125(a). (Doc. 1, ¶¶ 64-69, 70-77)

Venue is appropriate in the District Court of Arizona, Phoenix Division, because Defendants voluntarily consented to venue in Maricopa County, Arizona when they expressly and voluntarily agreed to, and signed, the Membership Agreement. (Docs. 1, ¶ 10 at 3-4; 1-2, ¶ 38 at 10[6]) *Best Western Intern., Inc. v. 1496815 Ontario, Inc*., 2007 WL

---

[6] In the parties' Membership Agreement, Defendants acknowledged that Best Western is headquartered in Phoenix, Arizona, that the majority of Best Western's records and

779699 (D.Ariz. March 13, 2007); *Productive People, LLC v. Ives Design*, 2009 WL 1749751, * 2 (D.Ariz. June 18, 2009) ("A contract's forum selection clause alone is sufficient to confer . . . venue[.]") (citing *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1406-07 (9th Cir. 1994); *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (forum selection clause in contract, providing that venue of action brought under contract would be deemed to be in Virginia, was enforceable).

### B. Personal Jurisdiction

A plaintiff bears the burden of establishing that the court has personal jurisdiction over each defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs*., 557 F.2d 1280, 1285 (9th Cir. 1977)). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp*., 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (internal quotation marks omitted). In considering Best Western's Motion for Default Judgment, the Court takes as true Best Western's allegations in its Complaint and resolves all factual disputes in Best Western's favor. *Id.*; *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)). "Nonetheless, 'mere "bare bones" assertions

---

employees are in Phoenix, Arizona, and that Phoenix, Arizona is the most convenient locale for actions between Best Western and Defendants. Specifically the Membership Agreement provides in pertinent part:

> UNLESS WAIVED BY BEST WESTERN IN WHOLE OR IN PART, THE COURTS LOCATED IN THE STATE OF ARIZONA, STATE OR FEDERAL, SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ALL CLAIMS, DISPUTES AND ACTIONS ARISING FROM OR RELATED TO THE APPLICATION PROCESS, THIS MEMBERSHIP APPLICATION AND AGREEMENT OR TO ANY RELATIONSHIP BETWEEN THE PARTIES HERETO AND VENUE SHALL BE IN THE COURTS LOCATED IN MARICOPA COUNTY, ARIZONA. *APPLICANT[S] EXPRESSLY CONSENT[] AND SUBMITS TO THE JURISDICTION OF SAID COURTS AND TO VENUE BEING IN MARICOPA COUNTY, ARIZONA*.

(Doc. 1-2, Membership Agreement, ¶ 38 at 9-10) (emphasis added).

of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.'" *Fiore v. Walden*, 657 F.3d 838, 846-47 (9th Cir. 2011) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)).

In the Ninth Circuit, "[p]ersonal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Arizona's long arm statute, like California's, is co-extensive with federal due process requirements; hence, the jurisdictional analyses under Arizona law and federal due process are the same.[7] *Pacific Scientific Energetic Materials Co. (Arizona) LLC v. Ensign*, 2011 WL 4434039, * 3 (D.Ariz. September 23, 2011) (citing Ariz.R.Civ.P. 4.2(a)); *Golden Scorpio*, 2009 WL 348740 at * 3 (citing *Schwarzenegger*, 374 F.3d at 801). "Absent traditional bases for personal jurisdiction (physical presence, domicile, or consent), due process is satisfied when a defendant has minimum contacts with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Best Western Intern., Inc. v. 1496815 Ontario, Inc.*, 2007 WL 779699 at 3 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Kruska v. Perverted Justice Foundation Inc.*, 2009 WL 249432 (D.Ariz. February 2, 2009). If a court determines that a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court may exercise either "general" or "specific" jurisdiction over an out-of-state defendant. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Based upon Defendants' voluntary agreement to personal jurisdiction in Maricopa County, Arizona by execution of the forum selection clause in the Membership Agreement, doc. 1-2, ¶ 38 at 10, the District Court of Arizona, Phoenix Division, has personal jurisdiction over Defendants, and each of them, by their consent. *Id.* at 1116, n. 2; *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("In general, we have held that a party has consented to personal jurisdiction when

---

[7] Because there is no general federal long-arm statute, federal courts look either to the long-arm statutes of the state in which the court sits or specific federal statutes which authorize the exercise of jurisdiction. *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).

the party took some kind of affirmative act - *accepting a forum selection clause*, submitting a claim, filing an action - that fairly invited the court to resolve the dispute between the parties.") (emphasis added); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp. 2d 1039, 1052 (N.D.Cal. 2010) ("Forum selection clauses, . . . are presumptively valid[,]" citing. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

The party disputing the validity of a forum selection clause bears the burden of proving the clause is unenforceable. *Rogers v. Wesco Properties, LLC*, 2010 WL 3081352, * 8 (D.Ariz. August 4, 2010). Defendants have not appeared in this action and have not raised any challenges to either the forum selection clause or the District Court's exercise of personal jurisdiction over them. Independently, the Court does not discern any basis to find that it would be unreasonable or unfair to enforce the terms of the parties' Membership Agreement. Accordingly, the Court finds that the District Court of Arizona may properly exercise personal jurisdiction over Defendants based on their consent to the forum selection clause in the Membership Agreement.

## C. Magistrate-judge Jurisdiction

On July 1, 2011, Best Western consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Doc. 7)   Even though Best Western has consented, a U.S. magistrate judge, as a non-Article III judge, does not have jurisdiction to enter a final judgment against a non-consenting, defaulted defendant. *United States v. Jenkins*, 734 F.2d 1322, 1325 n. 1 (9th Cir. 1983) ("It is well established that [] magistrate[ judges] are not Article III judges."); *Henry v. Tri-Services, Inc.*, 33 F.3d 931, 932 (8th Cir. 1994) ("We hold that the magistrate judge lacked authority to enter final judgment because [the defaulted party] did not consent to have the matter tried to the magistrate judge."). While the Ninth Circuit has not expressly addressed whether a magistrate judge has the constitutional authority to enter a default judgment against a non-consenting, defaulted defendant, the Supreme Court has recently held that a U.S. bankruptcy judge, also a non-Article III judge under the Constitution, "[l]ack[s] the constitutional authority to enter final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of

claim." *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 2620 (2011). Therefore, the undersigned Magistrate Judge will proceed by Report and Recommendation.

**III. Breach of Contract**

Best Western requests monetary damages in Count I for breach of contract as alleged in its Complaint. (Doc. 1, ¶¶ 48-52 at 13)

In an action involving federal and supplemental state law claims pursuant to 28 U.S.C. § 1367(a), federal courts apply the law of the forum state on the state claims. *Bass v. First Pac. Networks, Inc*., 219 F.3d 1052, 1055 n. 2 (9th Cir. 2000) ("[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply law of forum state to same extent as if it were exercising its diversity jurisdiction.") (citations omitted); *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). Moreover, as to the state law claims, the parties specifically agreed that the "Membership Application and Membership Agreement shall be governed and construed according to the laws of the State of Arizona . . . ." (Doc. 1-2, ¶ 37 at 9)

Under Arizona law, "[a]n enforceable contract requires 'an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained.'" *Richard E. Lambert, Ltd. v. Houston Const. Co., Inc*., 2009 WL 2031920, 2 (Az.Ct.App. July 14, 2009) (quoting *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Az.Ct.App. 1983)). "It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (Az.Ct.App. 2004) (citing *Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab*., 5 Ariz.App. 48, 423 P.2d 124 (Az.Ct.App. 1967)).

"Generally, contact law enforces the expectancy interests between contracting parties and provides redress for parties who fail to receive the benefit of their bargain." *Carioca Co. v. Sult*, 2010 WL 2606623, * 4 (Az.Ct.App. June 29, 2010) (quoting *Carstens v. City of Phoenix*, 206 Ariz. 123, 126, 75 P.3d 1081, 1084 (Az.Ct.App. 2003)), *rejected on other grounds*, *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc*., 223 Ariz. 320,

- 12 -

223 P.3d 664 (Ariz. 2010). Damages, however, must be proven with "reasonable certainty." *Chartone*, 207 Ariz. at 170, 83 P.3d at 1111 (citing *Gilmore v. Cohen*, 95 Ariz. 34, 36, 386 P.2d 81, 82 (Ariz. 1963)); *see also* Restatement (Second) of Contracts § 352 (1981). "Although 'reasonable certainty' does not require 'certainty in amount,' 'the plaintiff's evidence [must] provide some basis for estimating [its] loss. [T]he evidence must make an 'approximately accurate estimate possible.'" *Walter v. Simmons*, 169 Ariz. 229, 237, 818 P.2d 214, 222 (Az.Ct.App. 1991) (citations omitted). "An award of damages cannot be based on conjecture or speculation[.]" *Id.*

It is undisputed that the parties entered into a contract, namely the Membership Agreement, on December 7, 2006. (Docs. 1, ¶¶ 24 at 8-9, 48-52 at 13;1-2, Exh 1 at 3-12). Best Western contends that Defendants breached the Membership Agreement by failing to pay Best Western the amounts due as required by that Agreement, thereby resulting in damages in "the sum of no less than $67,634.84." (Doc. 1, ¶ 51 at 13) The Court will recommend that judgment be entered in the amount discussed hereinafter.

## IV. Debt on Open Account

Best Western alleges it rendered services and provided supplies on an open account, Defendants agreed to pay for such services and supplies in accordance with the Membership Agreement, and Defendants failed to pay for such services and supplies when due. (Doc. 1, ¶¶ 51-55 at 13-14)

"Generally speaking, an open account is one where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions . . . ." *Continental Cas. Co. v. Grabe Brick Co.*, 1 Ariz.App. 214, 217, 401 P.2d 168, 171 (Az.Ct.App. 1965) (citation and internal quotation marks omitted).

> An open account results where the parties intend that the individual items of the account shall not be considered independently, but as a connected series of transactions, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original express or implied intention, there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits. . . .

*Id.* (quoting 1 Am.Jur.2d, Accounts and Accounting, § 4, p. 373).

At the hearing, Best Western's allegations were supported by the testimony of Ms. Pollack and the numerous invoices or billing statements attached to the Complaint, doc.1-3, Exh 6 at 15-66, and received in evidence. (Doc. 29 at 16, Exh 1 at the hearing.[8]) Because there is no controverting evidence disputing the amount of money Defendants owed Best Western on open account, the Court will recommend that judgment be entered in the amount discussed hereinafter.

**V. Breach of Contract - Post-termination Use of Trademarks**

Count III of the Complaint alleges a breach of contract claim for post-termination use of trademarks for violation of the parties' Membership Agreement. (Doc. 1, ¶¶ 58-63 at 14-15)

Paragraph 24 of the Membership Agreement provides for liquidated damages where, as here, a former member continues to use Best Western's Symbols in connection with the hotel for more than fifteen (15) days following the termination of Best Western's membership and license. (Doc. 1, ¶ 61 at 15) "The amount of liquidated damages is equal to fifteen percent (15%) of the mean of the [Richland] Hotel's room rates per day, multiplied by the total number of rooms for every day that a former member continues to use the Best Western Symbols beyond the fifteen-day period." (*Id.*) Best Western claims that using this formula, Best Western is entitled to a liquidated damages award of $63,460.34.

Under Arizona law, "[e]xpress contract provisions governing remedies or damages are generally binding on the parties." *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133,

---

[8] During the hearing, Best Western discovered it had inadvertently omitted from hearing Exhibit 1"the first page of May 1st, 2011 [invoice], . . . where [the] interest charge is going to appear[.]" (Doc. 29 at 18) Pursuant to its discretion, the Court granted Best Western leave to file the omitted invoice after the hearing concluded. *United States v. Maris*, 2011 WL 468554, * 5 n. 5 (D.Nev. Feb. 4, 2011) (granting leave to file supplemental materials after motions were filed and a hearing held on a motion for summary judgment). The omitted invoice was filed as an attachment to Best Western's Post Hearing Memorandum. (Doc. 28-1, Exh 2 at 13)

138, 128 P.3d 756, 761 (Az.Ct.App. 2006) (citing *Dixon v. City of Phoenix*, 173 Ariz. 612, 618, 845 P.2d 1107, 1113 (Az.Ct.App. 1992)). "The right to recover liquidated damages is limited by the express terms of the parties' agreement." *Id.* (citing *Deuel v. McCollum*, 1 Ariz.App. 188, 191, 400 P.2d 859, 862 (Az.Ct.App. 1965) (reversing an award of liquidated damages because the plaintiff failed to prove a violation of the specific condition necessary to recover liquidated damages). If, however, a forfeiture clause in a contract "is in the nature of a penalty, rather than liquidated damages, it will not be enforced, in the absence of a showing of actual damages." *Larson-Hegstrom & Assocs., Inc. v. Jeffries*, 145 Ariz. 329, 333, 701 P.2d 587, 591 (Az.Ct.App. 1985).

"While the traditional role of a liquidated damages clause is to provide an economical alternative to the costly and lengthy litigation involved in a conventional breach of contract action, parties to a contract are not free to provide a penalty for its breach." *Best Western Intern., Inc. v. Royal Albert's Palace, Inc.*, 2011 WL 285818, * 5 (D.Ariz. January 27, 2011) (quoting *Pima Savings & Loan Ass'n v. Rampello*, 168 Ariz. 297, 299, 812 P.2d 1115, 1117 (Az.Ct.App. 1991). "Whether or not a provision for liquidated damages amounts to a penalty depends upon the circumstances of each individual case, and is a question of law for the Court." *Id.* (citation omitted). "Under Arizona law, an agreement made in advance of a breach is a penalty unless both of two conditions are met: 1) 'the amount fixed in the contract must be a reasonable forecast of just compensation for the harm that is caused by the breach', and 2) 'the harm that is caused by any breach must be one that is incapable or very difficult of accurate estimation.'" *Id.* (citations omitted). Whether each of these two requirements is met must be determined in light of all the facts and circumstances of each case. *Larson-Hegstrom*, 145 Ariz. at 333, 701 P.2d at 591. "The reasonableness of the amount fixed in the contract and the difficulties of proof of loss are determined at the time the contract is made, not at the time of the breach." *Best Western Intern., Inc.*, 2011 WL 285818 at * 5 (citations omitted). "However, the amount retained upon a contract's breach will be considered a penalty if it is unreasonable." *Id.* (citation omitted).

As Judge Snow pointed out in *Best Western Intern., Inc.*, 2011 WL 285818 at 5, three

District Judges in the District of Arizona, including Judge Snow, have now considered "[t]he enforceability of the same liquidated damages clause with respect to the same Plaintiff [Best Western], the same harm, and the same industry [and] have found the clause to be enforceable." *Id.*(citing *Best Western Int'l, Inc. v. Oasis Invs.*, 398 F.Supp.2d 1075, 1081 (D.Ariz. 2005); *Best Western Int'l, Inc. v. Sharda*, 2009 WL 1749458, *5–6 (D.Ariz. June 22, 2009)).

Viewing Best Western's liquidated damages clause at the time the parties entered into the Membership Agreement on December 7, 2006, the Court concludes it would have been extremely difficult for Best Western to accurately estimate Best Western's loss suffered due to Defendants' unauthorized use of its trademarks for a period of approximately six weeks in 2011after termination of the Membership Agreement, especially with the intervening national economic downturn, commonly called "The Great Recession," which dramatically impacted the real estate and hotel businesses. The Court finds that Best Western's liquidated damages clause in the Membership Agreement is enforceable and Best Western is entitled to recover liquidated damages in conjunction with its claim for breach of contract for post-termination use of trademarks.

**VI. Damages**

The Court finds that Defendants failed to pay Best Western certain dues, fees, charges and assessments owed through Best Western's fiscal year as required by the terms of the parties' Membership Agreement and Best Western's articles of incorporation, bylaws and rules and regulations. (Docs. 1, ¶¶ 45, 47, 49, 55) It is undisputed that, as of October 1, 2011, Defendants owed Best Western $71,523.71 on an open account, which represents certain dues, fees, charges, and assessments imposed on the Richland Hotel as a Best Western member, and the unpaid balance continues to incur an interest charge of 1.5% per month (18% per annum). (Doc. 18, ¶ 8)

The Court further finds that Best Western is entitled to liquidated damages pursuant to the formula to calculate liquidated damages established in paragraph 24 of the parties'

Membership Agreement.[9] A liquidated damages award is appropriate because Defendants continued to use the Best Western Symbols in connection with the Richland Hotel for more than fifteen (15) days following the termination of Defendants' membership with Best Western and the Best Western's License. (Doc. 1, ¶ 61)

Consistent with the Membership Agreement and as shown on Best Western's Marketing Statistics Report for the period of April 6, 2010 to April 6, 2011 attached to the Complaint, the average daily rate ("ADR") for the Richland Hotel was $80.37. (Doc. 1-3, Exh 7 at 68; tr. at 30-38) The Richland Hotel's ADR ($80.37) is then multiplied by the total number of rooms, (112,[10] doc. 1-3, Exh 7 at 69), for a result of $9,001.44. The sum of $9,001.44 is then multiplied by 15%, with a resulting liquidated damage of $1,350.22 for each day Defendants unlawfully continued to use the Best Western Symbols after the 15-day grace period. (Docs. 1, ¶ 62 at 15; 18, ¶ 13 at 4; tr. at 29-42) Applying the Membership Agreement's formula to the number of days, (47 days, from April 22, 2011, or the sixteenth day following Defendants' written notice of membership termination, through and including June 7, 2011, the last known date of Defendants' infringement; tr. 37-38) that Defendants

---

[9] Paragraph 24 of the Membership Agreement provides:

> For each day during which any Best Western Symbol or any name, symbol or device described in paragraph 23 are used in connection with the Hotel, after fifteen (15) days following termination of this License Agreement, Best Western may elect to claim from Applicant *daily damages in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per room per day multiplied by the total number of rooms*. This amount is payable by Applicant whether or not Applicant continues to exercise control over the operations of the Hotel. It is understood and agreed that said amount is fixed as liquidated damages because of the difficulty of ascertaining the exact amount of damages that may be sustained because of such use. It is further understood and agreed that said amount fixed as liquidated damages is a reasonable amount, considering the damages that Best Western will sustain in the event of such use.

(Doc. 1-2, ¶ 24 at 7) (emphasis added)

[10] "Number of Units" means number of rooms. (Tr. at 35; doc. 18, ¶ 13 at 4)

unlawfully used the Best Western Symbols, Best Western is entitled to liquidated damages from Defendants in the amount of $63,460.34 ($1,350.22 x 47 = $63,460.34). (Doc. 18, ¶ 14 at 4)

## VII. Attorneys' Fees and Non-Taxable Expenses

Relying on paragraph 36 of the Membership Agreement,[11] the Complaint seeks Best Western's attorneys' fees and costs incurred in this action. (Doc. 1, ¶ 52 at 13)

"It is well established that a court in Arizona may award attorney fees only when expressly authorized by contract or statute." *Burke v. Ariz. State Ret. Sys.*, 206 Ariz. 269, 272, 77 P.3d 444, 447 (Az.Ct.App. 2003); *Chavarria v. State Farm Mut. Auto. Ins. Co.*, 165 Ariz. 334, 337, 798 P.2d 1343, 1346 (Az.Ct.App. 1990). While Arizona statutory law does not authorize an award of attorneys' fees in an uncontested action arising out of a contract in the context of a default, A.R.S. § 12-341.01(A); *Morrison v. Shanwick*, 167 Ariz. 39, 46, 804 P.2d 768, 775 (Az.Ct.App. 1990), when parties contractually agree to pay attorney fees, § 12-341.01 does not alter the parties' agreement. *McDowell Mountain Ranch Comm. Assoc. v. Simons*, 216 Ariz. 266, 269, 165 P.3d 667, 670 (Az.App.Ct. 2007) (noting that it is "well-settled in Arizona that '[c]ontracts for payment of attorneys' fees are enforced in accordance with the terms of the contract'") (citations omitted); *Dorn v. Robinson*, 158 Ariz. 279, 287, 762 P.2d 566, 574 (Az.App.Ct.1988) (awarding prevailing party attorneys' fees where they were provided for by contract); A.R.S. § 12-341.01(A) ("[T]his section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees.").

---

[11] Paragraph 36 of the Membership Agreement provides as follows:

In the event that [Defendants] breach[] any obligation to Best Western, [Defendants are] liable to Best Western for all attorneys' fees, costs and expenses incurred by Best Western in connection with the breach or violation, whether or not suit is filed.

(Doc. 1-2, ¶ 36 at 9)

Here, the parties' Membership Agreement provides that Defendants are "[l]iable to Best Western for all attorneys' fees, costs and expenses incurred by Best Western in connection with the breach or violation" of the Membership Agreement (Doc. 1-2, ¶ 36 at 9) Therefore, Best Western is entitled to an award of its reasonable attorney fees and has complied with LRCiv 54.2(a). LRCiv 54.2(a) ("[i]f a final judgment . . . does not determine the propriety and the amount of attorneys' fees authorized by statute or by contract, . . . the procedures set forth in this Local Rule shall apply . . . .").

Best Western's Amended Affidavit of Michelle Swan in Support of Request for Attorneys' Fees and Costs establishes that Best Western is entitled to an award of attorneys' fees in the amount of $9,017.00, costs in the amount of $717.50 ($350.00 filing fee and $367.50 in service of process fees) and non-taxable expenses of $631.65 (fees for deliveries, postage and copying), for a total award of $10,366.15. (Doc. 24; tr. at 27-28) The Court finds that Defendants are liable for Best Western's attorneys' fees, non-taxable expenses, and costs pursuant to the parties' Membership Agreement. (Doc. #1-2, ¶ 36 at 9)

## VIII. Interest

### A. Pre-Judgment Interest

Best Western's breach of contract and open account claims are liquidated claims.[12] In Arizona, "'pre-judgment interest on a liquidated claim is a matter of right.'" *AMHS Ins. Co. v. Mut. Ins. Co. of Ariz.*, 258 F.3d 1090, 1103 (9th Cir. 2001) (quoting *Gemstar Ltd. v. Ernst & Young*, 917 P.2d 222, 237 (Ariz. 1996) (*en banc*)). "Under Arizona law, prejudgment interest begins when the creditor provides to the debtor 'sufficient information and supporting data so as to enable the debtor to ascertain the amount owed.'" *AMHS Ins. Co.*, 258 F.3d at

---

[12] "[A] claim is liquidated if the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance upon opinion or discretion." *Homes & Son Constr. Co. v. Bolo Corp.*, 526 P.2d 1258, 1261 (Az.Ct.App. 1974) (quotation omitted). Further, "damages are considered certain or capable of being made certain when the parties do not seriously dispute the basis of computation of damages if any are recoverable but instead primarily dispute liability." *Precision Heavy Haul, Inc. v. Trail King Indus.*, 228 P.3d 895, 898-99 (Ariz.Ct.App. 2010) (quotations omitted).

1   1103 (quoting *Homes & Son Const. Co., Inc. v. Bolo Corp.*, 22 Ariz.App. 303, 306, 526 P.2d

2   1258, 1261 (Az.Ct.App. 1974)).

3          Here, it is undisputed Best Western provided Defendants with sufficient information

4   and supporting data, *i.e.*, monthly invoices, for Defendants to ascertain the amount they owed

5   well before the Complaint was filed and in the Complaint itself. (Docs. 1-3, Exh 6 at 15-66;

6   29 at 16, Exh 1 at the hearing) As discussed above, the parties contractually agreed in the

7   Membership Agreement to a higher interest rate than the rate provided by Arizona law and

8   pre-judgment interest began to accrue from the date the money was due, *i.e.*, "[f]rom the due

9   date until paid[.]" (Doc. 1-2, Exh 1, ¶ 12 at 5; tr. at 17)  Plaintiff is entitled to pre-judgment

10  interest at an 18% annual rate or 1.5% per month, *id.*; doc. 18, ¶ 8, calculated using simple

11  interest[13] from and including November 1, 2010, to and including October 1, 2011, in the

12  amount of $4,909.10. (Doc. 28-1, Exh 1 at 5, Monthly Breakdown of Principal and Interest)

13         **B. Post-Judgment Interest**

14         Post-judgment interest is governed by federal law, even in diversity actions. 28 U.S.C.

15  § 1961[14]; *Citicorp Real Estate v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998). An exception

16  to § 1961 exists when parties contractually agree to waive § 1961's application and pay an

17  interest rate higher than the rate allowed by federal law. *Fidelity Federal Bank, FSB v. Burga*

18  *Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004) (citing *Citicorp Real Estate, Inc. v. Smith*, 155

19  _____

20         [13] Arizona courts have "been hesitant to compound its statutory prejudgment interest

21  rate." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 2009 WL 920300, *
    2 (D.Ariz. Mar. 31, 2009). Because Best Western has not asked the Court to do so, it will not

22  compound the contractual interest rate *sua sponte*.

23         [14] Title 28 U.S.C. § 1961(a) provides in pertinent part:

24         Interest shall be allowed on any money judgment in a civil case recovered in a district

25         court . . . Such interest shall be calculated from the date of the entry of the judgment,
           at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

26         published by the Board of Governors of the Federal Reserve System, for the calendar
           week preceding the date of the judgment . . . .

27

28  Title 28 U.S.C. 1961(a)(footnote omitted).

F.3d 1097, 1107-08 (9th Cir. 1998) (promissory notes included an express, mutually-agreed upon interest rate in the case of default); *Bd. Of Trs. of Laborers Health & Welfare Trust Fund For N. Cal. v. Shade Constr. & Eng'g*, 2007 WL 3071003, * 10 (N.D.Cal. Oct. 19, 2007) (citing *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005) ("[W]e acknowledge that parties may contract to, and agree upon, a post-judgment interest at a rate other than that specified in § 1961.")). "[M]ost courts that have addressed the question have held that parties may contract around § 1961 and agree to a different postjudgment interest rate." *Jack Henry & Associates, Inc. v. BSC, Inc*., 753 F.Supp.2d 665, 667-68 (E.D.Ky. Nov. 10, 2010) (citations omitted).

The Membership Agreement provides that Defendants agreed that "[p]ast due amounts shall bear interest at the rate of one and one half percent (1.5%) per month from the due date until paid, . . . ."  (Doc. 1-2, Exh 1, ¶ 12 at 5)  In *Citicorp Real Estate, Inc.*, the parties mutually agreed on "the rate that would apply in the event" of a default. 155 F.3d at 1108. The Ninth Circuit held that this language indicated "[a] mutual intent by the parties to have pre- and post-judgment interest calculated at the contract interest rate." *Citicorp Real Estate*, 155 F.3d at 1108 (footnote omitted). Similarly, the parties here contractually agreed to an 1.5% monthly interest rate and, thus, have waived § 1961's application. Best Western is entitled to post-judgment interest on $145,350.20 [15] at 1.5% per month (18% per year), from

---

[15] This amount includes contractual damages owed on open account of $71,523.71 ($66,614.61 in principal plus pre-judgment interest of $4,909.10), $63,460.34 in liquidated damages without pre-judgment interest, and $10,366.15 for Best Western's attorneys' fees, costs and non-taxable expenses incurred in this action. District Courts have generally calculated post-judgment interest on the combined principle and prejudgment interest, and compounded yearly. *Oswalt v. Resolute Indus. Inc.*, 2011 WL 3516163 (W.D.Wash. Aug. 11, 2011) (applying post-judgment interest to the combined principle and prejudgment award); *Lehman Bros. Holdings, Inc. v. Valley Vista Mortg., Inc.*, 2011 WL 2693509 (S.D.Cal. July 11, 2011) (same); *Burdick v. Villalba*, 2010 WL 4509832 (W.D.Wash. Nov. 2, 2010) (same); *In re W. United Nurseries, Inc.*, 2008 WL 732566 (D.Ariz. Mar. 17, 2008) (same); *see also Woodard v. Delportas*, 2008 WL 5082186 (D.Ariz. Nov. 26, 2008) (compounding post-judgment award annually); *Peterson v. Fed. Exp. Corp. Long Term Disability Plan*, 525 F.Supp.2d 1125 (D.Ariz. 2007) (same); *OAIC Commercial Assets, LLC*

the date of the entry of judgment until it is paid in full.[16]

**IX. Findings of Fact**

1.  At all times material herein, the Richland Hotel and Gurmukh Kullar were not in the military, were not minors, and were not incompetent persons. (Doc. 1-2, at 15)

2.  Defendant Richland Hotel Corporation GP, LLC, a Texas limited liability company, was served with Best Western's Summons and Complaint on July 7, 2011 by personal service on Pritpal Grewal, its registered agent, at Mr. Grewal's place of residence in Modesto, California.  (Doc. 8)

3.  At all times material herein, Defendant Gurmukh Kullar resided, and was domiciled, in Nevada when Best Western's Summons and Complaint and was served at his dwelling on July 8, 2011 by service upon Rana Singh, a person of suitable age and discretion residing at Kullar's residence in Reno, Nevada. (Docs. 9, 22 at 4)

4.  On or about December 7, 2006, Defendant Gurmukh Kullar voluntarily executed the parties' Membership Agreement as partial owner of the Richland Hotel and the designated voting member for Defendants in the Membership Agreement. (Docs. 1, ¶¶ 6 at 2-3, 24 at 9; 1-2, at 3, 12-13, 15)

5.  At all times material herein, Gurmukh Kullar was an authorized agent for the Richland Hotel Corporation GP, LLC.

6.  On or about December 7, 2006, Defendants voluntarily signed and consented to personal jurisdiction in Maricopa County, Arizona by execution of the forum selection clause in the Membership Agreement.  (Doc. 1-2, ¶ 38 at 10)

7.  At all times material herein, Defendants conducted substantial business operations in and with Arizona sufficient for the District Court of Arizona to exercise both specific and general personal jurisdiction over them in this action.

---

*v. Stonegate Village, L.P.*, 2006 WL 2788644 (D.Ariz. Sept. 20, 2006) (same).

[16] Per 28 U.S.C. § 1961(a), post-judgment interest is calculated "from the date of the entry of the judgment." 28 U.S.C. § 1961(a).

8. Defendants were contractually obligated to comply with the terms and conditions set forth in the parties' Membership Agreement as described herein.

9. Defendants breached the terms and conditions of the parties' Membership Agreement as described herein, entitling Best Western to recover contractual and liquidated damages.

10. Best Western incurred damages due to Defendants' breach of contract on an open account in the amount of $71,523.71, which includes pre-judgment interest through October 1, 2011, in the amount of $4,909.10 at the rate of one and one half percent (1.5%) per month until paid in full. (Doc. 1-2, Exh 1, ¶ 12 at 5)

11. Best Western incurred liquidated damages in the amount of $63,460.34 due to Defendants' breach of contract for Defendants' unauthorized post-termination use of Best Western's trademarks in accordance with the parties' Membership Agreement from April 22, 2011, to and including June 7, 2011 as described herein.

12. Best Western incurred $10,366.15 in attorneys' fees, costs and non-taxable expenses as a result of Defendants' breach of the parties' Membership Agreement as described herein.

13. Defendants have actual knowledge of this lawsuit as described herein and failed to answer or otherwise respond to Best Western's Complaint.

14. Upon Best Western's Application for Entry of Default on August 3, 2011, the Clerk of Court entered Defendants' default on August 4, 2011. (Docs. 13-14)

**X. Findings of Law**

1. Best Western properly and lawfully effectuated service of process on Defendants Richland Hotel Corporation GP, LLC and Gurmukh Kullar pursuant to federal and Arizona law, respectively.[17] (Docs. 8-9)

---

[17] Federal Rule of Civil Procedure 4 contains detailed provisions on the manner in which service should occur, and a plaintiff may utilize the service of process rules that apply in the state in which the federal district court is located or, if service is effected in another state, the rules of that state. Fed.R.Civ.P. 4(e)(1). Therefore, service of process will be

2.  Defendants voluntarily consented to personal jurisdiction in Maricopa County, Arizona by execution of the forum selection clause in the Membership Agreement. (Doc. 1-2, ¶ 38 at 10)

3.  The District Court of Arizona has subject-matter jurisdiction over this trademark infringement and breach of contract action. Venue is appropriate in the District Court of Arizona, Phoenix Division.

4. Best Western expressly consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 7)

5. The undersigned Magistrate Judge has authority to recommend a non-final and independent determination of fact and law that default judgment be entered against Defendants without their consent. *Wang v. Masaitis*, 416 F.3d. 992 , 999 (9th Cir. 2005) (holding that a magistrate judge was well within her authority to issue an report and recommendation on Wang's habeas petition without Wang's consent for *de novo* review by district judge); 28 U.S.C. § 636(b)(1)(A);  LRCiv. 72.2(a)(1).

6. Upon Best Western's approval of the Membership Agreement, Defendants were legally bound by the terms and conditions in the parties' Membership Agreement and Best Western's bylaws and articles, rules and regulations, and other regulatory documents as defined in Best Western's bylaws. (Doc. 1, ¶ 25 at 9)

7. Defendants wrongfully and unlawfully breached the parties' the Membership Agreement and Best Western's bylaws and articles, rules and regulations, and other regulatory documents as defined in Best Western's bylaws without legal or factual justification.

8.  Best Western has reasonably proven all its damages requested at the default damages hearing.

9. Best Western is legally entitled to an award of contractual damages due to

upheld if it conforms to either federal or applicable state service of process rules. *Robinson v. Heritage Elementary School*, 2009 WL 1578313, * 2 (D.Ariz. June 3, 2009).

Defendants' breach of contract on an open account and liquidated damages due to Defendants' breach of contract for Defendants' unauthorized post-termination use of Best Western's trademarks in accordance with the parties' Membership Agreement as described herein.

10. Best Western is legally entitled to an award of attorneys' fees, costs and non-taxable expenses pursuant to the parties' Membership Agreement as described herein.

11. Best Western is legally entitled to a default judgment against Defendants, jointly and severally, in the amount of $145,350.20 for the reasons set forth in this Report and Recommendation.

**XI. Conclusion**

Based on the facts, authorities, and analysis discussed herein, the undersigned Magistrate Judge **RECOMMENDS** that the District Court of Arizona **GRANT** Best Western's Motion for Default Judgment, doc. 17, and oral request as follows:

1. Best Western's Motion for Default Judgment against Defendant Richland Hotel Corporation GP, LLC, a Texas limited liability company, and Defendant Gurmukh Kullar be **GRANTED**;

2. Judgment be entered in favor of Plaintiff Best Western International, Inc. and against Defendant Richland Hotel Corporation GP, LLC and Defendant Gurmukh Kullar, jointly and severally, in the amount of $145,350.20. Judgment shall earn interest at the agreed-upon interest rate of 1.5% per month (18% per annum) from the date of entry of Judgment until paid in full;

3. Best Western's request to withdraw its seven other causes of action alleged in the Complaint's and its Motion for Preliminary Injunction, doc. 10, be **GRANTED**.

**IT IS ORDERED** that if this Report and Recommendation is approved by Senior United States District Judge McNamee or unless he otherwise directs, the Clerk is kindly directed to enter judgment pursuant to Rule 58(a), (b)(2), Fed.R.Civ.P.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1), as amended on December 1, 2009; Rules 72 and 6, Federal Rules of Civil Procedure, as amended on December 1, 2009. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Rule 72(b)(2), Fed.R.Civ.P. Failure to file timely objections to this Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Judge without further review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of this Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this Magistrate Judge's recommendations. Rule 72, Federal Rules of Civil Procedure.

Dated this 18th day of January, 2012.

Lawrence O. Anderson
United States Magistrate Judge